### In re KAKE SCHOOL DIST.
#### No. 5380–A.

District Court of Alaska. First Division. Juneau.
Aug. 28, 1946.

188

Wm. L. Paul, Jr. and Henry Roden, both of Juneau, for petitioner. .

Simon Hellenthal and R. E. Robertson, both of Juneau, for protestant.

KEHOE, District Judge.

On June 5, 1945, certain persons, 47 in number, describing themselves as citizens of the United States, over the age of twenty-one years and bona-fide residents of the community known as "Kake", in the First Judicial Division of the Territory of Alaska, filed in this court a petition praying that Kake and adjacent territory be incorporated as a school district in conformity with the provisions of Sections 1311–1326, Compiled Laws of Alaska 1933. The petition alleges that there is an adult resident population in excess of 300 within the boundaries of the proposed school district, and that there reside 90 children between the ages of six and seventeen years therein.

After a hearing on the petition the Court then sitting granted an application by P. E. Harris & Co., a corporation,

the operator of a salmon cannery near Kake, to file a protest to the granting of the petition as to its property within the proposed school district, alleging that its cannery and property are valued at several hundred thousand dollars and that its salmon canning plant is located about ½ mile from the village of Kake and one mile by shortest land route via a road which runs between Kake and the plant. The protest continues:

"That said Gunnock Creek, upon which are situated Protestant's said water rights and dam-site, is about one-half to three-quarters of a mile distant from the village of Kake, Alaska, and is between said village and said salmon cannery plant; that the area intervening between said village and said salmon cannery plant is a wilderness unimproved and unpopulated except by said road and a bridge across said Gunnock Creek and two or three Indian shacks or cabins situated below said road and in the brush between Gunnock Creek and said salmon cannery plant, and also save by said Protestant's said improvements of dam-site, flume and pipelines; that said shacks or cabins are not permanently occupied save as hereinafter stated.

## V

"That all or the great majority not only of the petitioners who signed said petition but also of the adult as well as school population of the area proposed by said petition to be included within the boundaries of said proposed school district make their permanent residences in said village of Kake itself, and none of them live upon the lands owned by Protestant or upon which its aforesaid improvements are situated, and the only all year around residents, so far as Protestant is informed and believes and therefore alleges, in the entire area between said Gunnock Creek and said salmon cannery plant, and in fact for a considerable portion of the distance extending northerly from said Gunnock Creek toward said village, is one Indian family whose daughter, a girl about 12 years old, is the only child of school

age who lives in the area just so described during the time of the year when school is or would be normally conducted.

## VI

"That the sole and only purpose of including within the boundaries of said proposed school district Protestant's said property is to render it subject to the jurisdiction of said school district for tax purposes and not because of any school children residing in that or immediate adjacent vicinity; that Protestant's said property would be practically the only property within said proposed school district that would be subject to such taxation, except as hereinafter stated; that the village of Kake itself is situated upon a portion of what is known as the patented townsite of Kake and all the land thereof is non-alienable and, if taxable, could not be seized and sold for nonpayment of taxes; in fact, the patent for said townsite was issued in 1933 and included an area of 96.78 acres of which 76.598 acres are unsubdivided; that the remaining 20.184 acres are subdivided into town lots but the Indian claimants of said lots have failed and refused to accept deeds from the United States of America to said lots, and the title to all of said land still remains in the United States of America, through James Ramsey, Trustee, in trust for the Indian people, including said petitioners, of Kake; that only one other tract, so far as Protestant is informed and believes and therefore alleges, is taxable by said school district which is situated within the proposed boundaries of said proposed school district, but the value of such other tract, including the personal property thereon, does not exceed $15,000 to $25,000; that the Indian residents of Kake could not be compelled to pay any taxes for the use of said school district, except taxes upon their personal belongings and possibly upon their houses which are located upon said non-alienable land; that should Protestant's said property be included within said proposed school district, it will be the chief and practically only source from which by taxation to raise revenues for use in operating said school district.

## VII

"That said village of Kake and the area upon which Protestant's said salmon cannery plant and other improvements are situated, are two separate and distinct districts, with no connection between them except said road, and are not in juxtaposition to each other, and are without any common community ties or needs, and the inclusion of Protestant's property within the boundaries of said proposed school district would be of no benefit whatsoever to Protestant or to its property and could serve only one purpose, namely: to compel Protestant to pay the larger share, if not in fact, practically all, of all such taxes as would be levied by the school board of said school district after its organization."

The protest prays that the petition be denied to the extent of excluding all of protestant's land and improvements and rights, both real and personal property, from the school district to be formed.

Petitioners filed, first, a demurrer to the protest, on the grounds that it failed to state facts sufficient to constitute a protest and, second, a motion to strike the protest from the files on the grounds that it is frivolous, immaterial and irrelevant.

The provisions of law governing the incorporation of school districts outside of incorporated towns so far as they relate to the petition and protest are as follows:

Section 1311: "School Districts Outside Incorporated Towns. Any town, village or settlement in this Territory outside the limits of any incorporated town, having a population of one hundred or more, and thirty children between the ages of six and seventeen years, may incorporate as a school district in the manner hereinafter provided, but such school district shall not embrace more than forty square miles of territory. Provided, however, that where such district contains more than thirty children between the ages of

six and seventeen years, the school district may embrace one hundred fifty square miles." Chap. 19, Sess.L.1937.

The manner of incorporation is prescribed by Section 1313, Compiled Laws of Alaska 1933, as follows:

"Manner of incorporation; petition; election. The manner of incorporation of school districts shall be as follows: A petition praying for such incorporation shall first be presented to the judge of the District Court of the judicial division in which the proposed school district is located. Such petition must be signed by at least thirty citizens of the United States or persons who have declared their intention to become such, over the age of twenty-one years, who are residents of the proposed school district, and shall specify as nearly as may be the location, boundaries and number of inhabitants of the proposed school district, and specify the name or number by which it is to be known. The judge of the District Court, upon presentation and filing of such petition shall order an election in said proposed district for the purpose of determining whether the people of the community desire such incorporation, and shall, by said order, designate the date of such election and appoint three qualified voters in the proposed school district to arrange for, supervise and appoint judges and election officers for such election. A printed or typewritten copy of said order shall be posted at three public places within the limits of the proposed school district for at least thirty (30) days prior to the day of election and such posting shall be sufficient notice of such election."

Sections 1314–1315, C.L.A.1933, define the qualifications of electors at school district elections and the duties of election judges.

Section 1316 is as follows:

"District established; name or number. If a majority of the votes cast at said election are in favor of incorporation, the District judge, by an order in writing entered in the records of the court, shall adjudge and declare that the community in which such election has been held, is a school dis-

trict corporation, and the same shall thenceforth exercise the powers hereinbefore and hereinafter designated, and such other powers as may be granted by law. Said order shall designate the school district by name or number and may correct or more definitely describe its boundaries."

The remainder of the sections dealing with the incorporation of school districts outside of incorporated towns relate to election judges, canvass of returns, school boards, classes of directors and the method of levying and collecting taxes to support the schools thus incorporated.

The question to be decided both upon the demurrer and motion to strike the protest, is the sufficiency of that protest in light of the statutes just quoted.

It will be noted that Section 1313, C.L.A.1933, provides the manner of incorporation, so far as this Court is concerned, by directing the Judge of the District Court, upon the presentation and filing of a petition for such incorporation, to issue an order for an election in the proposed district for the purpose of determining whether the people of the community desire such incorporation, and shall by said order, designate the date of election and appoint three qualified voters to arrange for, supervise and appoint judges and election officers for the election.

It is clear that the petition must comply with the law. It must be signed by at least 30 citizens of the United States, or persons who have declared their intention to become such, who are over the age of twenty-one years who are residents of the proposed school district. It shall specify as nearly as may be the location, boundaries, and number of inhabitants of the proposed school district, and shall specify the name or number by which it is to be known.

No hearing before the Court is provided for by the statute as is the case with petitions for the incorporation of cities of the first class, where the Legislature has seen fit to prescribe as a prerequisite to the granting of the petition that the District Judge shall give a "fair hearing" to those who are in favor of and those who are opposed to the incor-

poration, and then states: "And if he be satisfied that it is for the best interest and welfare of the community to incorporate as a city, he shall by order so adjudge, and he may, by the order, change or modify the proposed boundaries," Comp.Laws 1933, § 2372, clearly indicating the intention of the Legislature to vest in the District Judge the power to grant or deny the petition.

■ There is no doubt that the Legislature has the power to establish school districts. To do so is unquestionably one of the rightful subjects of legislation. Its right has never been questioned in Alaska, and it seems universally conceded elsewhere that state Legislatures have full and exclusive power to create, organize and establish school districts. 56 Corpus Juris 197. The Legislature may likewise delegate such power. 56 Corpus Juris 199.

Having delegated that authority to the District Judge, the Legislature defines and limits his powers to the granting of an order of election and to the correction and description of the boundaries of the district. Nowhere is he empowered to limit the area by restricting the incorporation to less than 40 square miles, or in an appropriate case, to less than 150 miles.

■ Under the heading of delegation of power to create, organize or alter school districts, 56 Corpus Juris 199 has this to say:

"Subject always to the rule that the legislature may not authorize the exercise of any power or the doing of any acts which exceed or transgress constitutional limitations, a subordinate agency so designated or established has such powers, and such only, with respect to the creation, establishment and alteration of school districts and organizations as may be conferred upon it by statute, which powers may be exercised only in such mode and manner, for such purposes, and subject to such conditions and restrictions, as are thereby prescribed, and which may be enlarged, diminished, or taken away at the will of the legislature."

■ With relation to mandatory provisions of a statute, Corpus Juris, Vol. 56, page 216 says:

" * * * and where the terms of the statute are mandatory, the presentation of a proper petition requires the officer or board to which it is presented to take action in accordance therewith, provided the officer or board determines that the petition is sufficient and that the action sought is authorized by the statute."

If it is held that this Court may eliminate from the boundaries of the proposed school district the properties of the protestant for the reasons set forth in its protest it seems reasonable then to follow that the Court may also eliminate other properties and it may so emasculate the district as to make it what it wills. Can it be said with reason that this was the clear intention of the Legislature when it said that the Judge of the District Court, upon presentation and filing of a sufficient petition shall order an election.

Protestant states that its property is separated from the inhabited community of Kake by a wilderness unimproved except by a road connecting Kake with its property and two or three Indian shacks and by protestant's dam-site, flume and pipe-lines, and is unpopulated except by one Indian family whose daughter is about 12 years of age. It further complains that the inclusion of its property in the area sought to be incorporated is for the sole purpose of rendering it subject to taxes for school purposes.

In the case of St. Joseph & G. I. Ry. Co. v. School District No. 2, Doniphan County, 114 Kan. 67, 217 P. 296, 297, the county superintendent of public instruction made an order undertaking to change the boundary of a school district so that it should include a portion of a railway bridge. The railway company sought by a quo warranto proceeding to oust the school district from jurisdiction over the added area, contending that the extension to include the bridge would benefit no one, and also contending it was done only for the purpose of providing additional revenue.

The Court in that case sustained the demurrer to the petition, saying: "There was no more reason for exempting it (the bridge) from school taxation because it was not capable of affording a place of residence for pupils than in the case (for instance) of a strip of railroad right of way."

The protestant urges that since the village of Kake itself is situated upon a portion of what is known as the patented townsite of Kake and that all the land thereof is non-alienable and, if taxable, could not be seized and sold for non-payment of taxes, and that since the Indian residents of Kake could not be compelled to pay any taxes for the use of the school district except taxes on their personal belongings and possibly upon their houses, protestant's property will be the chief and practically only property on which taxes to raise revenues could be levied.

But foreclosure of liens for taxes on real and personal property is not the only means provided for recovery of such taxes under our statute. Section 1324, C.L.A.1933 provides that such taxes, together with penalty and interest, may be collected after the same become due in a personal action brought in the name of the school district. And it nowhere appears that inhabitants of a proposed school district must own real property in order to qualify them to participate in the incorporation of such a school district.

It is no objection to the validity of the inclusion of territory in a school district that such territory is not taxable, nor is it invalid that property be included merely to secure additional revenue for the district. 56 C.J. 205, St. Joseph, etc., R. Co. v. School District No. 2, Doniphan County, 114 Kan. 67, 217 P. 296.

Protestant argues that our statute, Sec. 1311, C.L.A.1933, does not authorize the incorporation of any area which is not included in a town, village or settlement; that while our law limits incorporated school districts to 40 square miles or 150 square miles in a proper case, all of the area included within its exterior boundaries must be either town, village or

settlement; and that a wilderness, region or tract of land not actually occupied as a town, village or settlement should not be included in the incorporated school district.

■ But the protestants protest shows that its cannery is situated within one mile of the village of Kake by road and that its dam-site, pipe-lines and water rights are on or adjacent to Gunnock Creek located about one-half mile from the village of Kake, and one Indian family with a child of school age lives between Gunnock Creek and its cannery.

■■ The Court thinks that protestant's cannery and rights and land may reasonably be considered a part of the settlement of Kake. To confine the incorporation to the actual limits of the town of Kake seems unreasonable for every town, village or settlement has need of areas not actually occupied by houses, especially in Alaska where so much that sustains life comes from the wilderness, the waters and the unsettled areas adjacent thereto. When one thinks of the settlement of Kake with its population of Indian families whose livelihood the Court notices judicially comes largely from the sea and the forest, it is not unreasonable to associate that settlement with a cannery which uses the product of the toil of the Indian inhabitants of Kake and which, indirectly at least, benefits by their education.

It appears to the Court that the objections of protestant to the incorporation of the Kake school district are immaterial and irrelevant and do not state facts sufficient to constitute a valid protest.

They cannot be said to successfully attack the material allegations of the petition which the Court is constrained to hold and does so hold fully complies with the law.

The motion to strike will be granted and the demurrer sustained.